## TUTTLE *against* BEBEE.

In an action of *as-sumpsit*, brought by *A.* against *B.* the defendant may set off a *bond* given by *A.* to *C.* and *assign-ed* by *C.* to *B.* before the commencement of the suit.

THIS was an action of *assumpsit.* The cause was tried at the *New-York* sittings, in *December*, 1809, before Mr. Justice *Yates.*

The plaintiff's declaration, which was of *August* term, 1808, contained three counts:

1. On a written agreement dated *January* 1st, 1798, by which, in consideration that the plaintiff had delivered to him, a certain quantity of goods, of the value of

about 2,600 dollars, as collateral security for a promisso-
ry note of the plaintiff, held by the defendant, for 1,420
dollars payable the 1st of *May*, 1798. The defendant
promised, in case the note was punctually paid, to deli-
ver up the goods to the plaintiff, but if the note was not
paid, the defendant should sell the goods at auction,
and pay over the surplus, if any should remain, af-
ter discharging the note, and deducting commissions and
charges, to the plaintiff. The defendant pleaded *non as-
sumpsit*, with notice of a set-off. The agreement or re-
ceipt for the goods was produced in evidence.

A demand of the goods in *October*, 1804, was proved,
when the defendant admitted that he had sold the goods,
and that there was a balance in favour of the plaintiff,
which, he said, he had paid to certain creditors of the
plaintiff. The defendant, though requested, never ren-
dered to the plaintiff any account of the sale of the
goods.

The defendant offered, pursuant to the notice subjoin-
ed to his plea, to set off two bonds executed by the plain-
tiff, dated the 1st of *June*, 1801, one for 1,824 dollars and
50 cents, and the other for 1,007 dollars and 29 cents,
given to certain persons, in *Philadelphia*, and, by endorse-
ment thereon, assigned to the defendant, on the 1st of *Ja-
nuary*, 1808, which was prior to the commencement
of this suit.

The plaintiff's counsel objected to the admission of
this set-off, and it was rejected by the judge.

The defendant did not offer to produce any account
of sales of the goods; and the judge charged the jury to
take the invoice value, mentioned in the defendant's re-
ceipt, and after deducting the amount of the note, with
5 *per cent.* commissions and charges, and allowing a rea-
sonable time for the sale of the goods, to find a verdict
for the plaintiff, with interest. The jury found a verdict
for the plaintiff for 1,850 dollars.

A motion was made to set aside the verdict, and for a new trial. The material question was, whether the defendant ought not to have been allowed to set off the bonds, which had been assigned to him.

*Woodworth*, for the defendant, cited 3 *Johns. Rep.* 425. 4 *Term Rep.* 350. the opinion of *Buller*, J. 1 *Hen. Bl.* 659.; and relied on the case of *Bottomly* v. *Brook*, stated by *Lawrence*, J. *arguendo*, in the case of *Winch* v. *Keely*, (1 *Term Rep.* 621.) as in point. *Montague on Set-Off*, 11. 27.

*Johnson*, contra, admitted that courts of law had, of late years, gone very far in taking notice of assignees, and permitting assignments of *choses in action;* but he contended, that to admit the *set-off* in this case would be going further than this court had ever gone, and further than the decisions of the *English* courts. It would entirely overturn the maxim of the common law, in regard to the assignment of *choses in action*, and abolish all distinction between a court of equity and a court of law, in regard to equities or trusts of this kind.

THOMPSON, J. delivered the opinion of the court. The principal question in this case is, whether the defendant ought not to have been permitted to set off the bonds offered in evidence, which had been given by the plaintiff, and duly assigned to the defendant, before the commencement of this suit. It has been repeatedly ruled in this court, that we will recognise and protect the rights of an assignee of a *chose in action.* (1 *Johns. Rep.* 531. 3 *Johns. Rep.* 426.) This doctrine was carried so far, in the case of *Andrews* v. *Beecker*, (1 *Johns. Cas.* 411.) that a release by the obligee of a bond, after an assignment of it, and notice to the obligor, was held a nullity, and not to be regarded. This is conformable to what is laid down by the court of C. B. in *Legh* v. *Legh;* (1 *Bos. & Pull.* 448.) and *Eyre*, Ch. J. adds,

that it follows, as a necessary consequence, that the obli- NEW-YORK, May, 1811.
gor, in such case, cannot be permitted to plead payment
of the bond to the obligee. The assignee seems to be TUTTLE v. BEARD.
recognised as the real party in the suit, except not allow-
ing him to bring the suit in his own name. And this
arises from what *Bul'er*, J. (4 *Term Rep.* 340.) calls
a quaint maxim laid down in our old books, that for
avoiding maintenance, a *chose in action* cannot be as-
signed. " The good of that rule," he says, " seems
very questionable, and in early as well as in modern
times, it has been so explained away, that it remains, at
most, only an objection to the form of the action, in
any case." Although he admits that courts of law have
adhered to the formal objection that the action shall be
brought in the name of the assignor, yet, he sees no use
or convenience in preserving that shadow, when the
substance is gone; and that it is merely a shadow is ap-
parent from the later cases, in which the courts have
taken care that it shall never work injustice. The
case of *Bottomly* v. *Brook*, in the C. B. referred to by
Mr. Justice *Ashhurst*, in *Winch* v. *Keely*, (1 *Term Rep.*
623.) is a very strong case on this subject. It was an
action of debt on a bond. The defendant pleaded that the
bond was given for securing money lent to the defend-
ant by *E. Chancellor*, and was given, by her direction, to
the plaintiff, in trust for her, and that *E. Chancellor*, be-
fore the action brought, was indebted to the defendant
in more money than the amount of the bond. To this
plea there was a demurrer, which was withdrawn by the
advice of the court. So that the court did not look to the
person on the record legally entitled, but to the person
beneficially interested. The authority of this case was
afterwards recognised by the K. B. in the case of *Rudge*
v. *Birch;* (cited 1 *Term Rep.* 622.) and in *Winch* v. *Kee-
ly*, Mr. Justice *Ashhurst* says, " It is true, that formerly
courts of law did not take notice of an equity or a trust,
but of late years, as it has been found productive of great

expense to send parties to the other side of the hall, they have not turned them round upon this objection. Then, if this court will take notice of a trust, why should they not of an equity. It is certainly true that a *chose in action* cannot strictly be assigned; but this court will take notice of a trust, and see who is beneficially interested." Courts of law have lately been more liberal in noticing, and protecting the rights of assignees of *choses in action;* and some principles formerly adopted on this subject have been overruled. In the case of *Bauman* v. *Radenius,* (7 *Term Rep.* 666.) a case is mentioned by the counsel, in argument, where an action was brought in the name of a nominal plaintiff, by the persons beneficially interested, and Lord *Mansfield,* upon the trial, allowed the defendant to produce a release from the nominal plaintiff, and which he held conclusive. But this is directly at variance with the decision of this court in the case of *Andrews* v. *Beecker ;* and of the C. B. in the case of *Legh* v. *Legh.* The right of an assignee to avail himself of a set-off, in a case precisely like the present, has been recognised by the supreme court of *South Carolina,* in the case of *The Administrator of Comply* v. *Alken.* (2 *Bay,* 481.) Considering that the statute of set-off ought to be, as it always has been, liberally expounded to advance justice, and prevent circuity of action, we are of opinion, that the set-off ought to have been admitted; and we the more readily adopt this course, because it appears to be most in harmony with the general rules that have governed this court in protecting the rights of assignees.

A new trial must, therefore, be awarded, with costs. to abide the event of the suit.

SPENCER, J. observed, that though he concurred in the opinion of the court, he did it with hesitation, as he thought the decision went much further than courts of law had gone before, on this subject.

                                        New trial granted.