Hornblower, C. J.
This cause comes before us, upon a case certified by the Circuit Court of Cumberland county, for the opinion of this court, pursuant to the sixth section of the act to facilitate the administration of justice. Elm. Dig. 543.
The action is on two promissory notes, given by the defendant to one Elmer; payable to him or order, “ without defalcation or dismount,” and by him endorsed to the plaintiffs.
The defendant pleaded the general issue, and payment, (but to ■whom such payment is alleged to have been made, does not appear by the case.) These pleas were accompanied with a notice, that on the trial, the defendant would prove, that the notes had been indorsed to the plaintiffs, after they had come to maturity : and that at the time of, and before such indorsement, Elmer, the payee and indorser, -was indebted to him, in a certain sum for board and lodging; work and labor done; goods sold and delivered, &c.: and also, that at the time the notes were indorsed to the plaintiffs, they had been fully paid off and satisfied, and that nothing was then due upon them.
On the trial of the cause, the defendant offered to prove, that the notes were over due when they were indorsed to the plaintiffs; and that he (the defendant) then held three notes which had been given to him by Elmer, and w'hich were all due at the time of *224 such indorsement, amounting in the aggregate, to a greater sum than was due on the notes indorsed to the plaintiffs, and insisted that the same ought to be set-off against the amount claimed by the plaintiffs.
This evidence was rejected by the Circuit Court, and the jury rendered a verdict for the plaintiffs for the whole amount claimed by .them.
The notice which accompanied the defendant’s pleas, was not a notice of set-off under the statute to enable mutual dealers to discount. Elm. Dig. 506. It was not so, in form ; it could not be so in law. The relation of mutual dealers, did not exist between the plaintiffs and the defendant, and the statute therefore has no application to the case. I have fully expressed myself, on that point, in the case of Youngs v. Little, 3 Green 1; and what was then said, is sustained by the- cases cited on that occasion. I will only add, that the statute was made to prevent a multiplicity of actions, by enabling a defendant, who has a cause of action, in certain cases, .against the plaintiff, to liquidate the whole matter at once, by way of set-off, instead of being obliged to suffer judgment against himself, and then bring a new action against the plaintiff. It is not pretended that the defendant in this case, has any demand, or any cause of action against the Cumberland Bank; and consequently he has nothing he can set-off, against the plaintiffs, under the statute, in this 'action.
The single question, presented for our opinion by the case as certified is, whether in an action by an indorsee of a promissory note, who has taken it after its maturity, the maker can defend himself, in whole or in part, by proving the simple fact, that the indorser was indebted to him at the time he indorsed the note to the plaintiff?
No difficulty attaches itself to this case, from the circumstance that the notes declared upon, were payable, “ without defalcation or discount.” By the decision of this court, in Youngs v. Little, 3 Green 1, a promissory note, made in this state, containing these words, has precisely the same force and effect, since our statute, Elm. Dig. 445; as a promissory note, without those words in it, had at the common law.
The question then is, whether the mere fact, that, the indorser *225 of a promissory note, who has indorsed it after its maturity, was indebted, by note or otherwise, to the maker, at the time of making the indorsement, is, of itself a defence, in whole or in part to an action against him by such indorsee ?
That the indorsee of a bill or note, after dishonor, takes it subject to all equities existing between the maker and any of the prior parties; that, as against such indorsee, the drawer, acceptor or maker, of any bill or note, may set up any defence, which he might have done against the indorser, is language familiar to every lawyer, and often repeated in our books; but still the question arises : what constitutes such equities or matters of defence, as may be set up by the maker of a note, against the payee, or the holder of the note, at maturity ?
The answer is obvious. The maker may prove fraud, or mistake, or want or failure of consideration, or a release, or any thing else which goes to show, that he ought never to be compelled to pay that note, to the person to whom it was originally gi ven, or to any person who had held it after maturity and before it came to the hands of the plaintiff. Or, he may prove-payment, directly or indirectly, in money, or otherwise, by himself, to the payee or to any indorsee, before it came to the hands-of the plaintiff. In general terms, he may prove any thing that destroys or satisfies the note ; any thing that denies its validity, or that constitutes a bar to an action upon it. And all such matters may be given in evidence under the general issue; so that the defendant, by his notice in this case, has entitled himself to no advantage, of which he might not have availed himself under that plea.
But it is insisted, that if the indorser, at the time he indorsed the note, was indebted upon book account, or upon promissory notes, to the defendant, then the defendant had a right, in case he had been sued by the indorser, to make a set-off in that action, and he ought therefore to have a right to do so against the plaintiffs in this case. But this is a non sequitur. If the defendant docs not stand in such relation to the plaintiffs, as that he can plead payment to them, and give notice of set-off, under the statute, then he must be confined to such defence as he was entitled to make at the common law. Now in a case between mutual dealers, the defendant, by force of the statute may set-off against *226 the plaintiffs demand, every claim or cause of action, of the same nature, which he may happen to have against the plaintiff at the time of the action brought; and that, without any regard to the question, whether .there was any connection between the claims, or any intention or understanding between the parties, that the claims of the defendant should be admitted or considered as payments of or on account of the demands of the plaintiff. Whereas, at the common law, a defendant could only give in evidence such claims against the plaintiff as would be in the nature of payment, or accord and satisfaction. If the defendant had paid moneys' for, or to the plaintiff, or sold and delivered him goods, or done and performed work and labor for him, he could not have an allowance for the amount of such claims, in that action, by way of set-off; but only as payment or satisfaction; and, in order to have the benefit of such claims, as payments, the defendant must give evidence to show, that by some agreement or understanding, expressed or implied, between him and the plaintiff, they were to be received in, or to operate as payment of the debt sued for; and without such evidence, they remained mere matters of account, or causes of action, for which the defendant might have his action against the plaintiff.
So in this case: if the defendant, at the time when Elmer indorsed these notes to the plaintiffs, had actually paid any money to, or for Elmer, on account of these notes; or if he had sold him goods, or performed any services for him, under an understanding or agreement that the value of such goods or services, should be allowed him as, or towards payment or satisfaction of the notes, then, undoubtedly the defendant ought to have the benefit of such payments, whether in money, goods or services, in this •action. The plaintiffs by taking the notes after maturity, took them subject to this very defence, so far as it extends: not, it will be perceived, by way of set-off, under the statute, but as evidence ■of payment or accord and satisfaction before the notes came to the hands of the plaintiff.
If therefore, in this very case, the defendant had offered to prove, not only, that at the time of the indorsement of the notes to the plaintiffs, he held Elmer’s notes, then due, for an equal or greater amount; but, that it had been agreed or understood between Elmer and him, that the notes which Elmer held should *227 be considered as satisfied in whole or in part, by the notes which the defendant then held against Elmer; then, such evidence ought to have been admitted, and the jury ought to have been instructed, that if they believed the facts to be so, their verdict ought to be for the defendant. Such evidence ought to have been received, not to establish a set-off, but to prove a just and equitable defence, or bar to the action. It would have constituted precisely such a defence as the notes were subject to, in the hands of the plaintiffs, as indorsees after maturity. Such an indorsement is implied notice to the indorsee, of all equities subsisting ■between the original parties, and of every legal defence, to which the note was subject, in the hands of the payee. But a mere right, under the statute, to set-off, distinct and independent claims, if the payee had thought proper to sue the defendant, was not an equity affecting the validity of the note, and following it into the hands of the plaintiffs. Nor, is the right of set-off, onder the statute, either technically, or in any just and legal sense of the term, a defence or bar to an action. A matter which may be set-off, under the statute, is itself a cause of action ; and when used by a defendant, as a set-off, it is not, as a defence or bar to the plaintiffs action. On the contrary, it is an admission and in affirmance of, the plaintiff’s right of action, and of his title to the money he seeks to recover; and it proposes to liquidate and satisfy the claim, by applying to that end, so much of the defendant’s own money, then in the hands of the plaintiff, as will he sufficient for the purpose.
An indorsee of a note, before maturity, with notice of a particular fact, stands upon no better footing in relat ion to that fact, than an indorsee after maturity: and yet, in Tillou v. Britton, 4 Halst. R. 120, this court decided, that an indorsee, bona fide, and for valuable consideration, before maturity, but with notice, that there were unsettled accounts and mutual dealings between his indorser and the maker, was entitled to recover upon the face of the note, and without any reference to the state of those accounts.
In Borrough v. Moss, 10 B. and C. 558, in 21 Eng. Com. L. 128, this very question was before the eourt; and it was held, that an indorsee of an overdue note, does not take it liable to a set-off, of a debt due from the indorser to the maker. Bailey and *228 Park, Justices said, that though such an indorsee takes the note subject to all equities subsisting between the original parties, yet that no case bad gone so far, as to let in a set-off, notarising out of the note transaction; and Parke, Justice said, “if there is any agreement, express or implied, affecting the note, that is an equity, which attaches upon it, and is available against any person who takes it when over due.” But he added, that it did not follow, “that a right, depending entirely on the statute of set-off, is applicable to such a state of things.”
The case of Johnson v. Bridge, 6 Cowen R. 693, is to the same effect. In Chandler v. Drew, 6 New Hampshire R. 469; Richardson, C, J. held the same doctrine. So too, in Peabody v. Peters, 5 Pick. Mass. R. 1, Parker, C. J. held, that in an action against the maker of a note, indorsed after due, the defendant could not set-off a demand against the payee, unless there had been (as the fact was in that' case) some agreement between the payee of the note and the maker, before it came to the hands of the plaintiff, that that demand should be applied to the satisfaction of the note. So too, in Sergeant et al. v. Southgate, 5 Pick. Mass. R. 312, it was held in such an action, that the defendant might set-off against the plaintiff, a negotiable note made to him by the payee, on showing, that it was understood between them while the note was in the hands of the payee, that it should be so done. Iri these cases, (the last two I mean) it would be perceived, there were agreements existing between the maker and payee, in relation to the notes in question, which created equities that attached upon, and followed them into the hands of the indorsees, who by implication of law, took the notes, they being over -due, with notice of those agreements. The demands or debts due the defendants, were not therefore, properly speaking, admitted as set-offs, but as equitable defences, or as evidence of payment to the indorsers.
In Byles on Bills 95, 16 Law Lib. 58, which is a recent and respectable treatise, the rule is laid down to be, that an indorsee of an overdue bill or note, is liable to such equities only, as attach to the instrument, and not to claims arising out of collateral matters ; and therefore, that such an indorsee is not liable to a set-off due from the payee to the maker.
In Collenridge v. Farquharson, 1 Stark. 259, a negotiable note *229 had been deposited with the indorser, as security for what might bo found due to him from the defendant, oil a settlement of their accounts. The person to whom the note was so given, indorsed it to the plaintiff after it was due, and in an action by him against the maker, it was held, that the accounts between the maker and the indorser, might be gone into to show how much, if any thing the plaintiff ought to recover. This ease is an illustration of the rule, that strikes me as the true one, viz: that an independent claim, not connected with, or growing out of the note transaction, and which would be a set-off against it in the hands of the payee, only by force of the statute, cannot be given in evidence as a set-off or defence, in an action upon the note, by an overdue indorsee. But, that if there was any connection between the note and the account, or any agreement between the parties, before the indorsement, that the one should liquidate or secure the other in whole or in part, then there is an equity attaching on, and accompanying the note, to which it is liable in the hands of the indorsee after maturity.
In opposition to these eases, we are referred to Ford v. Stuart, 19 Johns. R. 342; O’Callahan v. Sawyer, 5 Id. 118; Driggs v. Rockwell, 11 Wend. R. 504; Tuttle v. Beebe, 8 Johns. R. 152.
The case of O’ Callahan v. Sawyer, it is true, goes the whole length contended for by the defendant. The court say, “ the indorsee took the note, subject to all the equity and to every defence which existed against it in the hands of the payeebut they do not stop to inquire, what constitutes an equity or defence: nor do the cases referred to by the court, sustain the doctrine. In Furman v. Haskin, 2 Caines 369, the defence was, that a judgment had been confessed to the plaintiff, in satisfaction of the note. In Hendricks v. Judah, 1 Johns. R. 319, it is true the language of the court seems to imply, that if the note had been indorsed at a late period after due, the set-off might have been admitted. But the point was not up in that ease, and it is evident the question now raised did not attract the attention of the court. In Brown v. Davis, 3 D. and E. 80, which is the only other ease, cited by the court in O’Callahan v. Sawyer, the defence set up by the defendant, was not a set-off, but absolute payment by him to •& prior holder <!-f the note. The case of Tuttle v. Beebe, 8 Johns. 152, has no application to this point. The question was, *230 whether in an' action of assumpsit, the defendant might set-off a bond given by the plaintiff, and assigned by the obligee to the defendant. It was held, that he might do so; and was rightly decided, for they were mutual dealers within the statute. The case of Driggs v. Rockwell, in 11 Wend. R. 504, I have not had an opportunity of examining; .but I admit the case of Ford v. Stuart, 19 Johns. R. 341, seems to sustain the doctrine contended for by the defendant. • But suppose that case and some others which may be found, have gone the length of admitting such set-offs, they only show, that it is an open question. . It certainly is such in this,State, and we must settle it upon principle, if we cannot upon authority. In my opinion the doctrine contended for would lead to great difficulty; such, as sitting here in a court of law, would greatly embarrass us.
In a case between mutual dealers under our statute, a defendant if he has a countervailing claim against the plaintiff, must set it off, or be precluded from recovering it: and if he makes a set-off, all matters of account between the parties are liquidated, a balance struck, a judgment rendered and the parties concluded of record. But how can this result be reached in an action between the indorsee and maker of a note ? Suppose the action is on a note for one hundred dollars. The defendant says the indorser is indebted to him in five hundred dollars: partly on book account, partly on the indorser’s own note and partly on his bond : What is to be done ? The defendant, cannot have judgment against the plaintiff, for the balance due him from the indorser, as in the case of mutual dealers. Will it be said, that in such a case, a verdict must be rendered generally for the defendant ? If so, what is the condition of the parties ?• T.he plaintiff has failed to recover on the note, and the defendant may turn round and sue the indorser for the whole amount of his claims : Which of those claims was set-off against the note? Shall the court and jury make a selection ; or will you leave it to the party to do so ? This is only one of the many difficulties that may arise.
In short, bills and notes remain negotiable, at the common law, after maturity. Brown v. Davis, 3 T. R. 80; and note a. in page- 83. This is the universal language of the books, and no statute has changed their character in this respect. We cannot alter the law, and they must be treated by us, after maturity, as *231 negotiable instruments, subject only to such equities and defences, or such objecitons to them, or impeachment of them, as they were exposes to in the hands of the last indorser.
In a y ( pinion therefore, the rule to show cause, ought to be discharged by the Circuit Court, and judgment final, entered for the plaintiff, with costs. If the defendant had offered to prove that there was some agreement or understanding between him and Elmer, express or implied, that the notes he took from Elmer, were to be held by him as evidence of payment of the notes held by Elmer, then the Circuit Court ought to have admitted the evidence: and in such case, I should adopt the sentiment expressed by Bullcr, Justice, in Taylor v. Mather, in note a. 3 T. R. 83, and leave it to the jury upon the slightest circumstance, to presume that the plaintiffs had notice, from the fact that the notes were over due, of a fraudulent intention on the part of Elmer to prejudice the defendant, or to violate an agreement between them, that the notes they severally held, were pro tanto, to liquidate each other.
When questions arise upon notes made in this state, not payable, without defalcation or discount, or between the obligor and the assignee of a bond, or other choses in action not assignable at common law, it will be time enough to settle the rights of the parties, upon the point of set-offs and discounts.